UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD DIMUCCI and DAVID QUEROLI,<br><br>    Plaintiffs,<br><br> v.<br><br>THE PENNSYLVANIA CONVENTION CENTER AUTHORITY and AHMEENAH YOUNG,<br><br>    Defendants. | CIVIL ACTION<br><br>No. 08-4810 |

Pollak, J.                  September 24, 2009

**OPINION**

This case stems from actions taken by defendants Pennsylvania Convention Center Authority ("PCCA") and Ahmeenah Young, then-Executive Vice President, External Affairs, of the PCCA, in response to an act of vandalism that occurred in the Pennsylvania Convention Center ("Convention Center"). Plaintiffs have brought suit under 42 U.S.C. § 1983 and Pennsylvania defamation law. This court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over the defamation count pursuant to 28 U.S.C. § 1367(a). Defendants' motion to dismiss (docket no. 2) is currently before the court. For the reasons given below, the court will grant the motion in part and deny it in part.

**I.**

The relevant facts as stated in the complaint reveal that on September 11, 2007, electrical cords and a light fixture in the main ballroom of the Convention Center were damaged. Plaintiffs

1

Richard DiMucci and David Queroli were master electrician members of the International

Brotherhood of Electrical Workers, Local 98 ("Local 98") employed by Elliot-Lewis Corporation

("Elliot-Lewis") in its capacity as the sole labor supplier at the Convention Center at the time the

vandalism occurred. In a letter to Larry del Speccio,[1] Local 98's business agent, Young described

the incident and stated that an investigation by the PCCA had discovered that plaintiffs were the

employees working in the ballroom when the vandalism occurred.[2] As a result, Young and the

PCCA suspended plaintiffs from the Convention Center for one month. The suspension cost

each of the plaintiffs at least 160 hours of pay and 162½ hours of overtime pay; plaintiffs also

allege that they suffered "impairment to their reputations and credibility, personal humiliation,

[and] mental anguish." Compl. ¶ 12.

Plaintiffs' three-count complaint alleges that (1) their suspension was wrongful and

violated 42 U.S.C. § 1983 by depriving them of a protected property interest in their employment

without due process of law, (2) Young's letter to del Speccio deprived them of their liberty

interest in their reputations without due process, and (3) Young's letter was defamatory.

## II.

In order to survive a motion to dismiss for failure to state a claim, a complaint need only

include "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

---

[1]     Mr. del Speccio's name is spelled "del Specchio" in the letter from Young but "del Speccio" by both parties.

[2]     Young's letter is referenced in, and relied on by, the complaint. It is therefore properly considered on this motion. *Pension Ben. Guar. Corp. v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993).

rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

U.S. 41, 47 (1957)). While a complaint "requires more than labels and conclusions" or "a

formulaic recitation of the elements of a cause of action," "detailed factual allegations" are

unnecessary. *Twombly*, 540 U.S. at 555. Rather, plaintiffs must simply include "sufficient

factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing a 12(b)(6) motion,

"the facts alleged [in the complaint] must be taken as true and a complaint may not be dismissed

merely because it appears unlikely that the plaintiff can prove those facts or will ultimately

prevail on the merits." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

"[R]easonable inferences" are also drawn in favor of the plaintiff. *Id.*

## III.

Plaintiffs' first claim alleges that Young and the PCCA deprived them of a protected

property interest without due process of law in violation of 42 U.S.C. § 1983 by "wrongfully . . .

suspend[ing them] without pay for one month." Compl. ¶ 14. In evaluating claims that state

action resulted in "deprivations of life, liberty, or property without due process of law," the court

applies "a familiar two-stage analysis." *Robb v. City of Phila.*, 733 F.2d 286, 292 (3d Cir. 1984).

At the first stage, the court assesses "whether the asserted individual interests are encompassed

within the fourteenth amendment's protection[s]." *Id.* "[I]f protected interests are implicated,"

the court "then must decide what procedures constitute 'due process of law.'" *Id.*

## A.

"State law creates the property rights protected by the Fourteenth Amendment," *Kelly v.*

*Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997), and "it is beyond dispute that a

contract with a state entity can give rise to a property right protected under the Fourteenth Amendment," *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1397 (3d Cir. 1991). A "private employment contract with a 'just cause' termination clause" may likewise "create a constitutionally protected property interest" with which the state may not interfere except in conformity with due process of law. *Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir. 2007).

A contract creates protected property rights if it either (1) "confers a protected status, such as those 'characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both,'" or (2) "includes a provision that the state entity can terminate the contract only for cause." *Unger*, 928 F.2d at 1399 (quoting *S&D Maint. Co. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988)). By contrast, if an employee "'may be terminated at any time, for any reason or for no reason,'" then the employment is at will, *Pipkin v. Pa. State Police*, 693 A.2d 190, 191 (Pa. 1997) (quoting *Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 335 (Pa. 1995)), and the employee consequently possesses no protected property interest, *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006).

The contract at issue here is a Customer Satisfaction Agreement ("CSA") entered into by the PCCA, Elliot-Lewis, Local 98, and a number of other unions.[3] Nothing in the complaint or the CSA suggests that the contract confers a "protected status" akin to either welfare benefits or permanent tenure. The only question to be resolved, then, is whether or not plaintiffs are "at-will" employees or whether the PCCA may only remove them for cause.

Defendants argue that plaintiffs are at-will employees because "the CSA makes

---

[3]     The CSA, like Young's letter, is relied on in the complaint, *see* Compl. ¶ 16, and the terms of the contract are therefore properly before the court, *see White*, 998 F.2d at 1196.

4

abundantly clear that PCCA retains the discretion to allow or disallow anyone to work at the

Convention Center." Defs.' Mem. in Supp. at 11. The PCCA's authority, however, is not so

sweeping. It is true that under the terms of the CSA and the Code of Conduct it incorporates,

"[w]orking in the Pennsylvania Convention Center facility is a privilege, not a right, and is

conditioned upon compliance with the Code of Conduct." Defs.' Ex. A, at 16. The PCCA also

expressly retains the ability to "enforce its Code of Conduct with respect to all persons" present

in the Convention Center, *id.* at 9; in fact, the CSA expressly grants the PCCA the power to

remove workers from the Convention Center for violating the Code of Conduct, *id.* at 7, 19. But

these provisions give the PCCA only the ability to remove employees from the Convention

Center for violating certain rules, not the authority to make employment decisions "at any time,

for any reason or for no reason." In other words, the CSA provides the PCCA with the authority

to remove employees *for specified causes. See Dee v. Borough of Dunmore,* 549 F.3d 225, 230

(3d Cir. 2008) (interpreting a list of enumerated reasons for suspending employees as imbuing a

government entity with the ability to suspend an employee for cause); *Cornman v. Phila.,* 380 Pa.

312, 329 (1955) ("[T]he phrase 'for cause' must mean some cause affecting or concerning the

ability or fitness of the incumbent to perform the duty imposed upon him. . . . *This being the case

the appointee does not hold at the will of the appointing power* . . . .") (emphasis in original).

The CSA grants the PCCA one other relevant power: Under Section K of the agreement,

the PCCA has "the authority to render an immediate resolution of all . . . disputes [involving

'show labor workers'[4]] of any nature in the course of the planning for and execution of a

---

⁴        As defined in the CSA, show labor workers are those who "erect[] and
dismantl[e] . . . conventions, trade shows, and other types of events." Defs.' Ex. A, at 3.

convention, trade show or other event." Defs'. Ex. A, at 7.  As the court has previously

recognized, this unambiguous language "grant[s] extremely broad authority to . . . PCCA" to

resolve disputes.  *Elliot-Lewis Corp. v. IBEW, Local 98*, No. 07-4446, 2008 WL 4435925, at *5

(E.D. Pa. Sept. 30, 2008).  Nevertheless, Section K's grant of authority does *not* expressly state

that the PCCA has the power to eject employees from the Convention Center for any reason.  Nor

may such authority be implied.  This court must interpret the CSA so as to "give[] effect" to "all

of its provisions."  *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 (3d Cir.

1973); *accord Dep't of Transp. v. Manor Mines, Inc.*, 565 A.2d 428, 432 (Pa. 1989).  Interpreting

Section K to grant the PCCA the power to eject and bar employees from the Convention Center

in resolving *any* dispute would, however, transform the more specific grant of authority to eject

employees for violations of the Code of Conduct into mere surplusage.  *Cf. Richardson v. Felix*,

856 F.2d 505, 509 (3d Cir. 1988) (holding that a statute specifying procedures for terminating

employees for cause precluded the ability to terminate the employees at will).  By contrast,

reading the CSA to allow the PCCA immediately to resolve all disputes – but only to remove

employees for the enumerated reasons – comports with the plain meaning of the contract and

gives independent effect to each of its provisions.[5]

Thus, although the CSA "supersede[s] any and all provisions of . . . collective bargaining

agreements" that "apply to work performed at the Convention Center" insofar as those

agreements are "inconsistent" with the CSA, Defs'. Ex. A, at 9, the PCCA's authority under the

---

[5]        Defendants rely heavily on the statement made by this court in *Elliot-Lewis Corp.*,
2008 WL 4435925, at *8, that the CSA "invest[s] the PCCA with broad and unchallengeable
authority to make decisions about workplace conduct."  That opinion, however, expressly
declined to determine whether the CSA "grants the PCCA authority so broad that it is
empowered to render decisions without cause and without adequate investigation."  *Id.* at *9.

CSA is not inconsistent with a protected property interest in employment at the Convention Center. This does not mean that the plaintiffs definitively enjoy a protected property interest in their employment, in part because only the CSA – and not any preexisting collective bargaining agreement covering the plaintiffs and modified by the CSA – is before the court at this juncture. Plaintiffs have nevertheless stated a plausible claim to a constitutionally protected property interest, and they need do no more to withstand defendants' motion to dismiss.

**B.**

Defendants argue that, even if plaintiffs sufficiently pled a property interest, Count I nevertheless fails to state a claim because the plaintiffs have previously received all the process they are due via the grievance and arbitration procedures incorporated in the CSA through Local 98's collective bargaining agreement. The question of what process is due is resolved by balancing the factors enumerated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Defendants' contention raises the antecedent question whether the details or existence of any arbitration procedure are properly considered on this motion. No such facts are included in the complaint, but defendants argue that the court may consider its earlier decision in *Elliot-Lewis Corp.*, No. 07-4446. That opinion awarded summary judgment to Local 98 in a suit brought by Elliot-Lewis seeking to vacate an arbitration award reinstating DiMucci and Queroli with back pay. *See id.* at 5. *Elliot-Lewis* is a matter of public record and therefore constitutes a proper subject for judicial notice "if the plaintiff's claims are based on" that decision. *Pension Ben. Guar. Corp. v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993).

The court need not decide whether or not plaintiff's claims are based on *Elliot-Lewis*,

7

however, because, even assuming that the earlier opinion is a proper subject of judicial notice, notice may only be taken of the opinion's existence, not of "the truth of the facts recited therein." *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). At most, then, the court could only consider the *existence* of its opinion upholding the arbitration award. Facts crucial to the *Mathews* analysis – including the route by which the plaintiffs obtained arbitration, the terms of any governing collective bargaining agreement, and the arbitration procedures that were used – would remain outside the scope of permissible judicial inquiry.

Thus, although defendants would short-circuit the *Mathews* balancing test on the ground that adequate post-deprivation arbitration and grievance proceedings conducted pursuant to a collective bargaining agreement are sufficient to satisfy the demands of the Fourteenth Amendment, *see Dykes v. SEPTA*, 68 F.3d 1564, 1571 (3d Cir. 1995); *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir. 1983), plaintiffs' complaint may not be dismissed on that ground. No document that could potentially be properly considered on this motion indicates either (1) whether or not any applicable collective bargaining agreement includes grievance-and-arbitration procedures covering the alleged wrongs to plaintiffs, or (2) the specific procedures that were followed.[6] Based on the allegations in the complaint and the related material properly before this

_____

   [6]   Plaintiffs' brief in opposition does state that Local 98 both (1) sent a grievance letter to the PCCA and (2) contacted the arbitrator designated in the collective bargaining agreement between Local 98 and Elliot-Lewis to "request[] . . . an arbitration hearing pursuant to the terms of the . . . [collective bargaining agreement]." Pls.' Mem. at 6. Plaintiffs' brief further states that the arbitrators "issued a 'Grievance Decision' determining that no proper cause existed for plaintiffs' suspension and ordering" the back pay award and that there was a "grievance arbitration between Local 98 and Elliot-Lewis." *Id.* at 7, 13. These facts would at least make dismissal a closer question. However, facts pled in memoranda of law may not generally be considered on a motion to dismiss, *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d

court, defendants' motion to dismiss must therefore be denied as to Count I.[7]

## IV.

Count II of the complaint alleges that defendants violated 42 U.S.C. § 1983 by "publishing false and defamatory statements about" DiMucci and Queroli, depriving them of their protected liberty interest in their reputation without due process. Because "'reputation alone is not an interest protected by the Due Process Clause,'" "to make out a claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill*, 455 F.3d at 236 (quoting *Versarge v. Township of Clinton*, 984 F.2d 1359, 1371 (3d Cir. 1993)). If a plaintiff demonstrates both a stigma – i.e., "a publication that is substantially and materially false," *Ersek v. Township of Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996) – and a sufficient plus, then the plaintiff's chief remedy "is a hearing to clear his name," *id.* at 84.

Here, the plaintiffs have sufficiently alleged both halves of a stigma-plus claim. Although they were only suspended from work at the Convention Center and not discharged, plaintiffs' colorable property interest in their continued employment standing alone constitutes "a sufficient 'plus.'" *Dee*, 549 F.3d at 234. Whether or not the plaintiffs have sufficiently stated a

---

173, 181 (3d Cir. 1988), and courts may more specifically not grant a motion to dismiss based on factual allegations that appear in the briefs and not in the complaint. *Fonte v. Bd. of Managers of Continental Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).

[7]     Defendants may, of course, introduce evidence on a motion for summary judgment in support of the contention that the plaintiffs have received all the process that they are due. Moreover, assuming that plaintiffs received the back pay awarded to them in the arbitration hearing, their claim to compensatory damages – which hinges on allegations of "lost pay and benefits," Compl. at 7 – may be moot. *See Cochetti v. Desmond*, 572 F.2d 102, 104-05 (3d Cir. 1978). Here again, however, the pertinent facts are not before the court.

stigma is a closer question. Young's letter does not, as plaintiffs allege, actually "accuse[]

[p]laintiffs . . . of causing the damage to the electrical cords and the light fixture." Compl. ¶ 9.

Rather, the letter states only that the PCCA learned as a result of its investigation that DiMucci

and Queroli were "working in the Ballroom" at the time the vandalism occurred and that they

were therefore suspended. Defs'. Ex. B, at 1. The court is further mindful that to prevail on their

liberty claim, plaintiffs must not only demonstrate that Young's statements were "substantially

and materially false" but also show that the damage to their reputations was "caused by the falsity

of the statements" and not by the publication of true statements concerning an investigation.

*Ersek*, 102 F.3d at 84. Nevertheless, given that Young's letter includes factual averments

concerning plaintiffs' whereabouts, and given that the letter at least creates the impression that

plaintiffs were responsible for the vandalism, the complaint adequately states the stigma half of

the stigma-plus test. Defendants do not argue otherwise.

Defendants do assert that plaintiffs have already received a sufficient name-clearing

hearing in the form of arbitration, and the Third Circuit has held that the availability of prior

hearings may provide plaintiffs with sufficient process to obviate the need for a separate name-

clearing hearing. *See Graham v. City of Phila.*, 402 F.3d 139 (3d Cir. 2005); *Liotta v. Borough

of Springdale*, 985 F.2d 119, 123 (3d Cir. 1993). In both *Graham* and *Liotta*, however, the

contours of the prior process were clear; the plaintiff in Graham was afforded a criminal trial,

while Liotta attended "an evidentiary hearing at which witnesses, including Liotta himself,

testified." *Id.* Here, by contrast, there is no indication of what procedures led to the arbitral

award of back pay to plaintiffs. It may well be the case that the grievance-and-arbitration process

was a sufficient substitute for a name-clearing hearing, but that determination cannot be made on

the basis of facts in the complaint, and the plaintiffs have sufficiently alleged a stigma-plus

claim. Defendants' motion to dismiss Count II is accordingly denied.

## V.

The final count of the Complaint, which arises under state law, alleges that Young's letter

to del Specchio defamed the plaintiffs. Defendants argue that this claim is barred by sovereign

immunity, and plaintiffs admit that they cannot maintain a defamation suit against the PCCA.

Pls.' Mem. in Opp. at 2 n.1. Defendants contend that sovereign immunity similarly forecloses

plaintiffs' defamation claim against Young.

Under Pennsylvania law, the Commonwealth "enjoy[s] sovereign immunity . . . and

remain[s] immune from suit except as the General Assembly shall specifically waive the

immunity." 1 Pa. Cons. Stat. § 2310. Sovereign immunity extends to both Commonwealth

agencies and employees of such agencies "act[ing] within the scope of [their] office or

employment," 42 Pa. Cons. Stat. § 8501, and the General Assembly has waived immunity in nine

categories of cases enumerated at 42 Pa. Cons. Stat. § 8522(b).

The state legislature has expressly determined that the PCCA is entitled to the same

sovereign immunity as any other state agency, 64 Pa. Cons. Stat. § 6018, and none of the

legislatively-created exceptions to immunity apply to plaintiffs' defamation claim.[8] Thus,

sovereign immunity bars plaintiffs' defamation action against Young if she acted within the

---

[8]    The exceptions cover cases concerning vehicles operated by Commonwealth
parties; health care professionals employed by a Commonwealth agency; "[t]he care, custody or
control of personal property"; conditions on real property, sidewalks, and highways owned by the
Commonwealth; potholes and other dangerous road conditions; "the care, custody or control of
animals"; liquor sales; "[a]cts of a member of the Pennsylvania military forces"; and, when
certain conditions apply, "[t]he administration, manufacture and use of a toxoid or vaccine not
manufactured in th[e] Commonwealth." 42 Pa. Cons. Stat. § 8522(b).

scope of her duties as an Executive Vice President of the PCCA when she sent the letter stating that plaintiffs were working in the ballroom at the time the vandalism occurred.

Under Pennsylvania law, "[c]onduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another, it is not unexpected by the employer." *Natt v. Labar*, 543 A.2d 223, 225 (Pa. Commw. Ct. 1988) (citing *Fitzgerald v. McCutcheon*, 410 A.2d 1270 (Pa. Super. Ct. 1979)); *accord Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000). Because sovereign immunity is an affirmative defense, these factors must be "'apparent on the face of the complaint'" in order to sustain a motion to dismiss for failure to state a claim. *Rycoline Prods. v. C&W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

Young's statements were within the scope of her employment with the PCCA. The complaint alleges that Young was Executive Vice President, External Affairs, of the PCCA and that the only defamatory statements about plaintiffs were contained in her letter to del Speccio. Compl. ¶¶ 4, 22. Further, Young's letter exclusively pertains to PCCA business, describes official actions taken by Young and the PCCA to investigate the vandalism, expresses concern about the impact of the event on the PCCA, and is signed by Young in her capacity as Executive Vice President on PCCA letterhead. Defs'. Ex. B. On the basis of the allegations in the complaint, it would therefore seem that Young composed the letter within the scope of her employment as Executive Vice President.

Plaintiffs' only argument to the contrary is that Young's statements were made outside

12

the scope of her employment because they were made "with actual malice" and with either knowledge of or "reckless disregard for the falsity of the statements." Compl. ¶ 26. That allegation would be sufficient to state a claim if Young were a municipal employee, but Pennsylvania law distinguishes between Commonwealth and municipal employees on precisely this dimension. Municipal employees are subject to suit for any action that "constituted a crime, actual fraud, actual malice or willful misconduct." 42 Pa. Cons. Stat. § 8550. "The General Assembly has *not*," however, "included any such abrogation of the immunity provided to Commonwealth agency employees." *Yakowicz v. McDermott*, 548 A.2d 1330, 1334 n.5 (Pa. Commw. Ct. 1988) (emphasis in original). Rather, Commonwealth employees' immunity extends both to "liability for intentional tort claims" generally, *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992), and to defamation claims coupled with allegations of malice in particular, *Yakowicz*, 548 A.2d at 1333-34. Accordingly, plaintiffs' defamation action is barred by sovereign immunity, and defendants' motion will be granted as to Count III.

## VI.

For the reasons stated above, defendants' motion to dismiss will be denied as to Counts I and II and granted as to Count III. An appropriate order accompanies this opinion.

13