# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD DIMUCCI and DAVID QUEROLI,<br><br>      Plaintiffs,<br><br> v.<br><br>THE PENNSYLVANIA CONVENTION CENTER AUTHORITY and AHMEENAH YOUNG,<br><br>      Defendants. | CIVIL ACTION<br><br>No. 08-4810 |

Pollak, J.                                                      June 29, 2010

## OPINION

   This case stems from actions taken by defendants Pennsylvania Convention Center Authority ("PCCA") and Ahmeenah Young, then-Executive Vice President, External Affairs, of PCCA, in response to an act of vandalism that occurred in the Pennsylvania Convention Center ("Convention Center"). Plaintiffs Richard DiMucci and David Queroli have sued PCCA and Young, claiming that (1) their suspensions deprived them of a protected property interest in their employment without due process of law in violation of 42 U.S.C. § 1983, (2) defendants also violated § 1983 by depriving them of their liberty interest in their reputations without due process, and (3) defendants defamed them. On September 24, 2009, this court granted defendants' motion to dismiss the defamation claim on the ground of sovereign immunity, but declined to dismiss the due process claims. *See DiMucci v. PCCA*, No. 08-cv-4810, 2009 WL 3073827, at *3 (E.D. Pa. Sept. 24, 2009) ("*DiMucci I*"). In denying the motion to dismiss the

1

property interest claim, this court held that (1) plaintiffs sufficiently alleged the existence of a constitutionally protected property interest in their employment, and (2) although defendants argued that plaintiffs received the requisite process from the grievance and arbitration procedure provided in the collective bargaining agreement ("CBA") between the National Electrical Contractors Association ("NECA") and Local 98, International Brotherhood of Electrical Workers ("Local 98"), the details of that procedure were not properly considered in deciding a motion to dismiss. *See id.* at *2-*4. Similarly, in allowing plaintiffs to proceed to discovery on their liberty interest claim, this court ruled that (1) plaintiffs sufficiently alleged the elements of a claim for an injury to their reputations, and (2) nothing properly before this court provided a basis for determining whether plaintiffs had received due process. *See id.* at *4-*5. Defendants now move for summary judgment on both § 1983 claims.[1]

## I.

On September 11, 2007, electrical cords and a light fixture in the main ballroom of the Pennsylvania Convention Center were damaged in an apparent act of vandalism. Plaintiffs were master electrician members of Local 98, employed by Elliot-Lewis Corporation ("Elliot-Lewis") in its capacity as the sole labor supplier at the Convention Center at the time the vandalism occurred. In a letter sent on September 14, 2007 to Larry del Spechio, Local 98's business agent, Young described the incident and stated that an investigation by PCCA had discovered that plaintiffs were the employees working in the ballroom when the vandalism occurred. As a result,

---

[1] Defendants have also filed a motion for leave to file a reply brief in support of their summary judgment motion. The motion for leave, which plaintiffs have not opposed, will be granted. Plaintiffs, meanwhile, have submitted a letter request for oral argument on defendants' summary judgment motion. However, since the parties' briefs focus the issues in clear-cut fashion, there appears to be no need for oral argument.

Young and PCCA ordered Elliot-Lewis to suspend plaintiffs from the Convention Center for one month. The suspension cost each of the plaintiffs at least 160 hours of pay and 162½ hours of overtime pay; plaintiffs also allege that they suffered "impairment to their reputations and credibility, personal humiliation, [and] mental anguish." Compl. ¶ 12.

On September 14, 2007, del Spechio sent a letter to Young grieving the decision to suspend plaintiffs and requesting a grievance hearing. Young Decl. ¶ 5. This letter initiated the grievance/arbitration process contained in the NECA/Local 98 CBA.

Pursuant to that process as described by Jefferey P. Scarpello, the Executive Director of NECA's Penn-Del-Jersey Chapter, if a grievance cannot be resolved between the employer and Local 98, it is referred to the NECA/Local 98 Labor-Management Committee ("LMC"), which consists of three members appointed by Local 98 and three members appointed by NECA. Scarpello Aff. ¶ 2. On October 12, 2007, the LMC met to consider the grievance concerning plaintiffs' suspension. *Id.* ¶ 4. Del Spechio represented plaintiffs at the hearing; an Elliott-Lewis representative also attended, but – to plaintiffs' evident dissatisfaction – PCCA was not present at the hearing. Grievance Decision at 1-2.

According to the LMC's Grievance Decision, plaintiffs denied committing the vandalism, and evidence was presented that employees besides DiMucci and Queroli also had access to the ballroom where the vandalism occurred. *Id*. at 1. Elliot-Lewis's representative also stated at the hearing that it had "no evidence linking DiMucci or Queroli to the alleged vandalism and it suspended them only because instructed to do so by PCCA." Scarpello Aff. ¶ 4. The LMC also noted that PCCA refused to rescind the suspensions and conduct a full investigation. *See* Grievance Decision. On the basis of this evidence, the LMC concluded that "there was

3

insufficient evidence submitted of proper cause to suspend DiMucci and Queroli." *Id.* at 2. Accordingly, it ordered that plaintiffs be reinstated and awarded them back pay. *See id.*

Elliot-Lewis subsequently sued to vacate the grievance decision, but this court affirmed the award on the grounds that (1) the dispute was arbitrable, and (2) the arbitrator's decision drew its essence from the agreement. *See Elliot-Lewis Corp. v. Int'l Bhd. of Elec. Workers*, No. 07-4446, 2008 WL 4435925, at *8-9 (E.D. Pa. Sept. 30, 2008). Although they had been reinstated with back pay, plaintiffs separately brought this lawsuit, seeking both compensatory and punitive damages.

## II.

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists where the jury could reasonably find for the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute over facts is material where it could affect the outcome of the case, *Belitskus v. Pizzingrilli*, 343 F.3d 632, 639 (3d Cir. 2003). "In considering the evidence, the court should draw all reasonable inferences against the moving party." *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

## III.

### A.

In evaluating claims that state action resulted in "deprivations of life, liberty, or property without due process of law," courts apply "a familiar two-stage analysis." *Robb v. City of Phila.*,

4

733 F.2d 286, 292 (3d Cir. 1984). At the first stage, this court must assess "whether the asserted individual interests are encompassed within the fourteenth amendment's protection[s]." *Id.* "[I]f protected interests are implicated," this court "then must decide what procedures constitute 'due process of law.'" *Id.* In denying defendants' motion to dismiss this claim, I determined that, although the Customer Satisfaction Agreement signed by PCCA, Elliot-Lewis, and Local 98 "grants extremely broad authority to . . . PCCA to resolve disputes," it "is not inconsistent with a protected property interest in employment at the Convention Center." *DiMucci I*, 2009 WL 3073827, at *3 (internal quotation marks omitted). Although "[t]his conclusion does not mean that the plaintiffs definitively enjoy a protected property interest in their employment," *id.*, I will assume *arguendo* that plaintiffs have alleged facts sufficient to indicate that they enjoyed a protected property interest in their employment. I further assume that plaintiffs may assert a viable claim for the infringement of a protected property interest even though they were subsequently reinstated with back pay. *See Dee v. Borough of Dunmore*, 549 F.3d 225, 228-32 (3d Cir. 2008) (finding that a firefighter possessed a protected property interest in his employment even though he was reinstated after being suspended with pay for less than ten days). The question then to be addressed is whether plaintiffs have been accorded procedures that satisfy the constitutional standard of due process of law.

When an employee possesses a protected property interest in her job, the employee is generally entitled to a hearing or some related form of due process before being deprived of that interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Due process is satisfied "where an adequate grievance/arbitration procedure is in place and is followed." *Dykes v. SEPTA*, 68 F.3d 1564, 1572 (3d Cir. 1995). In *Dykes,* for example, a bus driver was

terminated for refusing to submit to a body-fluids test.  Following the bus driver's discharge, the union pursued three levels of grievance proceedings, determined that the tests requested were based on reasonable suspicion, and upheld Dykes's discharge.  *Id.* at 1566.  The Third Circuit held that the three-step grievance process that could be followed by arbitration constituted due process, even though the union did not ultimately submit the matter to arbitration.  *Id.* at 1571.

*Dykes* compels the conclusion that plaintiffs have already received all the process they are due.  Like the plaintiff in *Dykes*, DiMucci and Queroli utilized an available grievance and arbitration process that culminated when, in accordance with the process prescribed by the CBA, Local 98 submitted a grievance appeal challenging plaintiffs' one-month suspension.  Del Spechio Aff. ¶ 5.  During the hearing before the LMC, plaintiffs' interests were represented by del Spechio, who stated in his affidavit that "part of his duties is to represent the Employees employed by the Labor Supplier, Elliot-Lewis at the Pennsylvania Convention Center."  *Id.* ¶ 2.  Further, the grievance decision recites that "[b]oth Messrs. DiMucci and Queroli den[ied] any involvement with this vandalism," which suggests that plaintiffs had some opportunity to tell their side of the story.  Grievance Decision at 1.  In light of *Dykes*, this process amply satisfied the requirements of the Fourteenth Amendment.

Plaintiffs nevertheless argue that *Dykes* is distinguishable because, unlike the employer in that case, PCCA did not attend the grievance hearing, and, in fact, could not be compelled to attend because it "is not a signatory to the" CBA.  *Elliot-Lewis*, 2008 WL 4435925, at *6.  But, as the *Elliot-Lewis* opinion recognized, the fact that the process laid out in the CBA does not "reach[]" PCCA "does not imply that proper parties under the CBA cannot challenge, and defend, PCCA's decisions amongst themselves."  *Id*.  This is precisely what occurred: Elliot-

6

Lewis suspended plaintiffs at the direction of PCCA as a result of the vandalism in the ballroom, and the LMC hearing afforded plaintiffs the opportunity to pursue their dispute against PCCA. Moreover, PCCA's basis for suspending the plaintiffs – that they were working in the ballroom at the relevant time – was directly refuted by the evidence that other employees also had access to the ballroom, and the grievance decision states that "there was insufficient evidence submitted of proper cause to suspend Messrs. DiMucci and Queroli." Grievance Decision at 2. In short, plaintiffs used the LMC hearing to challenge and overturn the basis for their PCCA-driven suspensions. Thus, although "the actual decision of the PCCA could not be, and was not, overturned by an arbitration appeal" because PCCA was not a party to the CBA, *Elliot-Lewis*, 2008 WL 4435925, at *6, in these circumstances, the fact that Elliott-Lewis, and not the PCCA, served as plaintiffs' nominal adversary before the LMC is no more than incidental from the standpoint of due process. Accordingly, defendants are entitled to summary judgment on plaintiffs' property interest claim.

**B.**

Plaintiffs' remaining claim is that "defendants violated 42 U.S.C. § 1983 by publishing false and defamatory statements about [them], depriving them of their protected liberty interest in their reputation without due process." *DiMucci I*, 2009 WL 3073827, at *4 (internal quotation marks omitted). "In order to make out a claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (quoting *Versarge v. Township of Clinton*, 984 F.2d 1359, 1371 (3d Cir. 1993)). If a liberty interest is implicated, a plaintiff's chief remedy is a hearing to clear his name. *See Codd v. Velger*, 429 U.S. 624, 629

7

(1977). In rare cases in which a "a name-clearing hearing might be insufficient to cure all the harm cause[d] by stigmatizing government comments," such as when "injury to a plaintiff's reputation might be irreversible," a plaintiff might, however, "be entitled to damages in addition to or in lieu of a hearing." *Ersek v. Township of Springfield*, 102 F.3d 79, 84 n.6 (3d Cir. 1996).

Defendants both (1) contest the existence of a protected liberty interest, and (2) argue that plaintiffs received all due process. *See* Defs.' Br. at 18-19. As with plaintiff's property interest claim, this court will assume, *arguendo*, the existence of a protected interest. *See DiMucci I*, 2009 WL 3073827, at *5 (holding that "the plaintiffs have sufficiently alleged both halves of a stigma-plus claim"). The question thus again becomes whether the hearing before the LMC constituted due process.

The Third Circuit has held that the availability of prior hearings may provide sufficient process to obviate the need for a separate name-clearing hearing. In *Graham v. City of Philadelphia*, 402 F.3d 139 (3d Cir. 2005), for instance, the court found that a public employee terminated from employment due to an arrest on criminal charges was not entitled to a name-clearing hearing because he was acquitted following a criminal trial, which provided ample opportunity to take and present evidence supporting his innocence. *See id.* at 147. And in *Liotta v. Borough of Springdale*, 985 F.2d 119 (3d Cir. 1993), the court held that a borough council evidentiary hearing at which the plaintiff – a borough administrator accused of stealing funds – testified on his own behalf provided sufficient process to constitute a name-clearing hearing. *See id.* at 123.

Like the procedures in *Graham* and *Liotta*, the hearing plaintiffs received before the LMC served as an adequate substitute for a name-clearing hearing. Plaintiffs were represented at the

8

hearing, and evidence was presented on their behalf. At a minimum, this evidence included statements made by plaintiffs, establishing that they, or someone speaking on their behalf, had the opportunity to tell their side of the story. *See* Grievance Decision at 1. And, ultimately, the hearing exonerated the plaintiffs when the LMC concluded – much as a criminal jury might – that there was insufficient evidence from which to conclude that DiMucci and Queroli had perpetrated the vandalism. For these reasons, the hearing was sufficient to satisfy the minimal requirements of a name-clearing hearing.

As with their property claim, plaintiffs argue that the arbitration process did not provide sufficient due process because it did not involve any direct dispute against PCCA, but rather was only a resolution of plaintiffs' rights under the CBA against Elliot-Lewis. As discussed above, however, the grievance hearing (1) involved the dispute arising from PCCA's actions, (2) considered evidence concerning whether plaintiffs committed the vandalism of which PCCA accused them, and (3) exonerated the plaintiffs. PCCA's absence from the hearing therefore cannot alter the conclusion that plaintiffs have received an adequate substitute for a name-clearing hearing.

Plaintiffs further argue that they are entitled to relief in addition to a name-clearing hearing. Pls.' Br. at 27. Their claim to additional relief is based on the fact that, after returning to work, they were, in spite of the LMC's decision, harassed by co-workers and subjected to name-calling as a result of defendants' false accusations. *See id.* at 28. Plaintiffs also claim that they were subjected to continuing harassment by PCCA and Elliot-Lewis. *Id.* This evidence does not, however, rise to the level of harm the Third Circuit suggested in *Ersek*, 102 F.3d at 84 n.6, could provide grounds for further relief. Plaintiffs do not argue that they have suffered

9

further pecuniary repercussions, and there is no basis for believing that the allegations against DiMucci and Queroli were so severe as to result in irreversible harm to their reputation.[2] Accordingly, no additional relief is warranted, and defendants are entitled to summary judgment on plaintiffs' liberty interest claim.

## IV.

For the foregoing reasons, defendants' motion for summary judgment will be granted. An appropriate order accompanies this opinion.

---

[2] Plaintiffs cite a Second Circuit case, *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004), in support of their claim to further relief. Patterson, however, held that a name-clearing hearing would not provide sufficient relief where (1) a prior hearing was inadequate, and (2) four years had passed since the prior hearing took place. *See id.* at 338. Here, by contrast, the prior hearing was both prompt and adequate.